## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**ERIC ANTONIO MEJIA-RAMOS,**          *

    **Petitioner,**          *

**v.**          *          **Crim. No. DLB-13-496**
                                          **(Civ. No. DLB-21-339)**

**UNITED STATES OF AMERICA,**          *

    **Respondent.**          *

## MEMORANDUM OPINION

Eric Antonio Mejia-Ramos ("Mejia") moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the ground that his trial and appellate counsel was unconstitutionally ineffective. ECF 717. The United States opposes the motion. ECF 716. No hearing is necessary. *See* 28 U.S.C. § 2255(b); Rule 8(a), *Rules Governing § 2255 Cases in the U.S. Dist. Cts.*; Loc. R. 105.6. For the following reasons, Mejia's motion is denied. A certificate of appealability shall not issue.

## I.     Background

In 2016, Mejia and several co-defendants were charged with conspiracy to participate in a racketeering enterprise in violation of 18 U.S.C. § 1962(d) for their involvement in the MS-13 gang. ECF 313. Most of the defendants pled guilty. But Mejia and one co-defendant, Miguel Angel Manjivar, went to trial. The two were tried together, and Mejia's counsel, Gerald Ruter, did not move to sever Mejia's case from Manjivar's. At trial, multiple witnesses testified that Mejia was a member of MS-13. *See* ECF 653, at 170–71; ECF 660, at 27, 86–87; ECF 660, at 111–12; ECF 656, at 17; ECF 657, at 65; ECF 658, at 42; ECF 659, at 33, 119. Multiple witnesses also testified that Mejia killed Ingrid Martinez, a woman he believed to be a member of a rival gang. *See, e.g.*, ECF 656, at 9; ECF 657, at 76–79; ECF 658, at 43–44. The parties stipulated that

neither Mejia's DNA nor his fingerprints were found on or near Martinez's body.  ECF 661, at 180–83.  But the United States used historical cell-site data about Mejia's phone as evidence that Mejia had picked up Martinez on the night of her murder and returned the next day to the place where her body was buried.  *See* ECF 659, at 174, 177.  The government had obtained that data without a warrant, but pursuant to a court order.  *See id.* at 126.

One witness, Roni Arriola-Palma, testified that while he was detained with Mejia and Manjivar in Prince George's County Detention Center in 2013, Manjivar told him that Mejia had left one MS-13 clique and joined another.  *See* ECF 653, at 173.  In his testimony, Arriola-Palma also mentioned that he had been in jail with Mejia in Washington, D.C. on one other occasion.  *See id.* at 173, 175.  Ruter did not object to Arriola-Palma's testimony on either point.

After the 12-day trial, a jury found both men guilty of RICO conspiracy and made a special finding that Mejia had conspired to murder Ingrid Martinez and committed numerous additional acts of racketeering.  ECF 509.  Mejia was sentenced to life imprisonment.  ECF 573.  Mejia appealed his conviction—again represented by Ruter—challenging aspects of the testimony of three witnesses.  *See United States v. Mejia-Ramos*, 798 F. App'x 749, 751–54 (4th Cir. 2019).  Ruter did not challenge the sufficiency of the evidence or the government's warrantless procurement of Mejia's historical cell-site data.  The Fourth Circuit affirmed Mejia's conviction.  *Id.* at 756.

On February 9, 2021, Mejia filed a § 2255 motion, contending that Ruter provided him ineffective assistance of counsel.  ECF 713.  The government filed a brief in opposition.  ECF 716.  Mejia then filed an amended motion that withdrew one of his initial arguments.  ECF 717.

## II.     Standard of Review

Section 2255 allows a prisoner in federal custody to move to vacate, set aside, or correct

their sentence

> upon the ground that the sentence was imposed in violation of the Constitution or
> laws of the United States, or that the court was without jurisdiction to impose such
> sentence, or that the sentence was in excess of the maximum authorized by law, or
> is otherwise subject to collateral attack[.]

28 U.S.C. § 2255(a).  The Court must hold an evidentiary hearing on such a motion "[u]nless the

motion and the files and records of the case conclusively show that the prisoner is entitled to no

relief," in which case dismissal is appropriate.  *Id.* § 2255(b); *see United States v. Mayhew*, 995

F.3d 171, 176 (4th Cir. 2021).

Generally, a petitioner's failure to raise a claim on direct appeal bars consideration of the

claim in a § 2255 motion.  *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (citing

*Sanchez-Llamas v. Oregon*, 548 U.S. 331, 351 (2006)).  Courts may consider procedurally

defaulted claims only "when a habeas applicant can demonstrate cause and prejudice, or actual

innocence." *Id.*  Claims of ineffective assistance of counsel are an exception to this rule because

such claims ordinarily are not litigated on direct appeal.  *Massaro v. United States*, 538 U.S. 500,

509 (2003); *see also United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010) (noting

ineffective assistance of counsel claims are considered on direct appeal "only where the record

conclusively establishes ineffective assistance").

## III.    Discussion

To help ensure our adversarial system produces just results, the Sixth Amendment to the

U.S. Constitution guarantees a criminal defendant the effective assistance of counsel.  *United

States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017) (citing *Strickland v. Washington*, 466 U.S.

668, 686 (1984)).  To prevail on a claim of ineffective assistance of counsel, a petitioner must

satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88.  *See United States v. Freeman*, 24 F.4th 320, 326 (4th Cir. 2022).  That test requires the petitioner to show that (1) his counsel's performance was deficient and (2) he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *Freeman*, 24 F.4th at 326.  Ultimately, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

To satisfy the deficient performance prong, a petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness."  *Id.* at 688. Performance is evaluated based on "'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (quoting *Strickland*, 466 U.S. at 690); *see Carthorne*, 878 F.3d at 465.  "Declining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court."  *Davila v. Davis*, 582 U.S. 521, 533 (2017); *see also United States v. Palacios*, 982 F.3d 920, 923–24 (4th Cir. 2020).  The "first prong sets a high bar." *Buck v. Davis*, 580 U.S. 100, 118 (2017).

To satisfy the prejudice prong in the context of trial representation, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Similarly, "[t]o show prejudice in the context of appellate representation, a petitioner must establish a 'reasonable probability . . . he would have prevailed on his appeal' but for his counsel's unreasonable failure to raise an issue."  *United States v. Rangel*, 781 F.3d 736, 745 (4th Cir. 2015) (quoting *Smith v.*

4

*Robbins*, 528 U.S. 259, 285–86 (2000)).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  *Id.* at 697.  Nor must a court address both components if one is dispositive.  *Jones v. Clarke*, 783 F.3d 987, 991–92 (4th Cir. 2015) (citing *Strickland*, 466 U.S. at 697).

### A. Severance

Mejia argues that Ruter provided ineffective assistance of counsel by failing to move to sever Mejia's case from his co-defendant's case in the district court and by failing to raise this issue on appeal.  ECF 717, at 27 & 27 n.7.

There are two problems with Mejia's argument.  First, Mejia has not shown that there was any basis for severing his case from Manjivar's.  "If two defendants are properly indicted together, courts generally adhere to the principle that defendants indicted together should be tried together." *United States v. Young*, 989 F.3d 253, 266 (4th Cir. 2021) (quotation omitted).  Severance is necessary to protect a defendant "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *United States v. Lighty*, 616 F.3d 321, 348 (4th Cir. 2010).  Mejia does not dispute that he was properly indicted with Manjivar.  And his explanation of why he and Manjivar should not have been tried together is inadequate.  *See* ECF 717, at 27 n.7.  Mejia says only that "since the bulk of evidence was overwhelming as to Manjivar, his codefendant, and not him, that his counsel erred in not seeking a severance of the trials as that would have at least shielded him from the evidence against Manjivar, which unduly prejudiced him by association."

*Id.*  Beyond that conclusory assertion that he was "unduly prejudiced" by being tried alongside Manjivar, Mejia has little to say.  Fundamentally, Mejia's argument is that severance would have improved his odds of acquittal.  However, as the Fourth Circuit has held time and time again, a defendant is "not entitled to severance merely because he might have had a better chance of acquittal in a separate trial."  *See, e.g.*, *United States v. Cannady*, 924 F.3d 94, 103 (4th Cir. 2019) (quoting *Lighty*, 616 F.3d at 348).  Because Mejia has not shown that there was any basis for severing his case from Manjivar's, he has not shown that Ruter's decision not to move for severance was deficient performance.

Second, Mejia has not shown that severing his case from Manjivar's would have made any difference to the verdict against him.  The evidence from which he wishes he had been "shielded" would have been admissible in a severed trial to establish other elements of RICO conspiracy, like the existence of a covered enterprise and a pattern of racketeering activity.  *See Salinas v. United States*, 522 U.S. 52, 62 (1997); *United States v. Cornell*, 780 F.3d 616, 621 (4th Cir. 2015).  Even if evidence about Manjivar alone were not admitted, Mejia likely still would have been convicted.  Nine witnesses identified Mejia as a member of MS-13.  Multiple witnesses testified that Mejia killed Martinez.  There was no reasonable probability that severing his trial from Manjivar's would have led to acquittal.

Mejia does not identify what he would have wanted Ruter to say about severance on appeal.  But since there was no basis for the trial court to grant a motion to sever and there is no reasonable likelihood that severance would have changed the verdict anyway, there is no reason to find that he would have prevailed on appeal even if he had moved for severance below, been denied, and then taken that denial to the Fourth Circuit.  *Cf. Young*, 989 F.3d at 266 (noting that the "defendant must show that he was prejudiced by the denial of a severance motion in order to establish that the

district court abused its broad discretion" by denying a motion to sever and that "[d]emonstrating prejudice is a high hurdle"). Plus, Mejia has not even attempted to show that a severance argument on appeal would have been "plainly stronger" than the arguments Ruter actually made. *See Davila*, 582 U.S. at 533.

Mejia has not established that he had any basis to sever his case from Manjivar's. And he has not shown that there was a reasonable probability that a severed trial would have resulted in acquittal or that raising the severance issue on appeal would have changed the outcome. The Court finds that Ruter's failure to move for a severance was neither deficient performance nor prejudicial. As a result, Mejia has not established that Ruter provided him ineffective assistance of counsel by failing to move to sever.

### B. Arriola-Palma's Testimony

Second, Mejia claims that Ruter provided ineffective assistance by failing to object to the introduction of certain testimony from Arriola-Palma. Mejia raises two specific issues: a) that Arriola-Palma's testimony about Manjivar's statements about Mejia's MS-13 clique membership was hearsay ineligible for the co-conspirator exception of Federal Rule of Evidence 801(d)(2)(E); and b) that Arriola-Palma's two brief references to being detained with Mejia denied the petitioner the presumption of innocence.

Mejia has not established that Ruter's failure to object to these elements of Arriola-Palma's testimony was prejudicial. There was so much evidence against Mejia that there is no reasonable probability that the jury would have returned a different verdict if Ruter had objected successfully to these components of Arriola-Palma's testimony. Nine witnesses testified that Mejia was a member of MS-13—the fact Arriola-Palma's testimony about Manjivar's remark was supposed to help prove. Multiple witnesses testified that Mejia himself killed Martinez for the very reason that

he thought she belonged to a rival gang.  In that context, it is quite unlikely that Arriola-Palma's remarks about Manjivar's statement and his allusion to his time in jail with Mejia mattered at all, let alone that they were dispositive.  "[I]n light of the overwhelming evidence against Petitioner, there was no prejudice."  *Suleitopa v. United States*, No. ELH-19-1933, 2020 WL 2061554, at *13 (D. Md. Apr. 28, 2020) (citing *United States v. Benson*, 957 F.3d 218, 2020 WL 1966843, at *9 (4th Cir. Apr. 24, 2020)).

In addition, Mejia cites no case for the proposition that fleeting references to pretrial detention, without more, impair the presumption of innocence to which a defendant is entitled. Although it does not appear that the Fourth Circuit has addressed the prejudicial effect of two brief references to the defendant's time in jail, the court has been skeptical that a "stray reference" to the defendant's incarceration—even post-conviction for a crime—is prejudicial.  *See United States v. Smith*, 919 F.3d 825, 841 n.12 (4th Cir. 2019) (finding that a "singular stray reference to [the defendant's] prior incarceration did not amount to prejudicial testimony"); *United States v. Hayden*, 85 F.3d 153, 158 (4th Cir. 1996) (finding that "brief, not repeated" acknowledgment that the defendant served time in prison, when accompanied by curative jury instruction, was not prejudicial).  The absence of authority for Mejia's position further undermines his bid for relief.

Because Mejia has not established that he was prejudiced by Ruter's failure to object to this testimony, he has not established that Ruter's failure to object amounted to ineffective assistance of counsel.

### C.  Witness Testimony to Their Own Crimes

Next, Mejia contends that Ruter provided ineffective assistance by failing to object when several MS-13 members testified about their own crimes.  ECF 717, ¶ 159.  According to Mejia,

that testimony was irrelevant, hearsay, and inadmissible under Rules 801(d)(2)(E) and 404(b). Mejia is incorrect.

That testimony was relevant. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence[ ] and . . . the fact is of consequence in determining the action." *United States v. Walker*, 32 F.4th 477, 388 (4th Cir. 2022) (quoting Fed. R. Evid. 401). A fact is of consequence if it bears on the "elements of the offense charged." *Id.* (quoting *United States v. Lamberty*, 778 F.2d 59, 60–61 (1st Cir. 1985)). To prove that Mejia participate in a RICO conspiracy, the government had to prove the existence of a racketeering enterprise and that Mejia agreed that he or some other conspirator would commit acts of racketeering. *See United States v. Mathis*, 932 F.3d 242, 258 (4th Cir. 2019). The witnesses' testimony that they committed crimes that count as acts of racketeering during the existence of the conspiracy spoke to both of these elements, helping establish the nature of MS-13, the conspirators' involvement in it, and the acts of racketeering they committed as members. Their testimony was relevant.

Their testimony was admissible as well. First, it was not inadmissible hearsay. Mejia offers no explanation for his claim that it was. Nor could he. Hearsay is "an out-of-court statement offered to prove the truth of the matter asserted in the statement." *United States v. Huskey*, 90 F.4th 651, 667 (4th Cir. 2024) (quotation omitted). "Unless an exception applies, hearsay 'is not admissible' in federal trials." *Id.* (quoting Fed. R. Evid. 802). A witness's testimony about a crime that the witness committed is not testimony about an out-of-court statement; it is testimony about what the witness himself did. Second, objecting to this testimony because it did not satisfy Rule 801(d)(2)(E) would have been futile. The testimony Mejia challenges—admissions of personal involvement in the conspiracy—were not statements by coconspirators made during and in

furtherance of the conspiracy.  Third, the admission of that testimony did not violate Federal Rule of Evidence 404(b).  ECF 717, 31 n.12.  "Rule 404(b)(1) provides that '[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.'"  *United States v. Hall*, 858 F.3d 254, 260 (4th Cir. 2017) (quoting Fed. R. Evid. 404(b)(1)).  The aim of the rule is to protect defendants "from the prejudicial effect of their prior convictions."  *Id.*  As Mejia acknowledges, "none" of the statements he argues Ruter should have objected to depicted crimes Mejia himself committed—only offenses his co-conspirators committed.  ECF 717, ¶¶ 33, 118.  For that reason, the admission of these statements did not implicate, much less violate, Rule 404(b).

Because the testimony Mejia takes issue with was relevant and admissible, there was no basis for Ruter to object to it.  For the same reasons, there is no reasonable probability that any objection Ruter might have made would have changed the outcome of the trial.  In consequence, Ruter's failure to object to the witness testimony as irrelevant or inadmissible was neither deficient performance nor prejudicial.

### D.  Insufficiency of the Evidence

Mejia also claims that Ruter was ineffective as Mejia's appellate counsel.  His first argument is that on appeal, Ruter should have challenged the sufficiency of the evidence to sustain the conviction.  ECF 717, ¶ 163, 164–67.

Ruter's decision not to challenge the sufficiency of the evidence on appeal was not deficient performance.  The Fourth Circuit reviews a challenge to the sufficiency of the evidence "to determine whether '*any* rational trier of fact could have found' that all elements of the charged offenses were proven beyond a reasonable doubt."  *United States v. Barronette*, 46 F.4th 177, 202 (4th Cir. 2022) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in *Jackson*).

The court's review of a jury verdict is "highly deferential." *Id.* at 203.  The Fourth Circuit takes the evidence in the light "most favorable to the Government," *id.*, does not reconsider the credibility of the witnesses, and may find even "the uncorroborated testimony of one witness" sufficient to sustain a conviction, *United States v. Wilson*, 115 F.3d 1185, 1190 (4th Cir. 1997). Any challenge to the sufficiency of the evidence at Mejia's trial would have had to clear that high bar.  Fighting this this uphill battle was not a "plainly" better strategy than making the evidentiary arguments Ruter chose to make instead.  *See Davila*, 582 U.S. at 533.

Nor has Mejia shown that he would have overcome that high bar if Ruter had made that argument on appeal.  He identifies only three issues with the sufficiency of the evidence.  First, he makes the conclusory claim that "in [his] estimation," the government did not establish the elements of a RICO conspiracy.  ECF 717, ¶ 164.  That sheds no light whatsoever on what specific deficiencies Mejia believes would have precluded any rational trier of fact from finding that the evidence established the elements of the offense.  The Court sees none.

Second, Mejia emphasizes that the parties stipulated that neither his DNA nor his fingerprints were found on or near the body of the woman the jury found he killed.  *Id.* ¶ 165.  But this point is an argument that the Fourth Circuit should and would have placed greater weight on the absence of DNA and fingerprint evidence than on the eyewitness testimony that he killed her and the cell-site data associating him with the location of the killing.  That hope is incompatible with the Fourth Circuit's commitment to view the evidence in the light most favorable to the government and its refusal to review the credibility of witnesses.  *See Wilson*, 115 F.3d at 1190.

Third, Mejia underscores that most of the evidence at trial concerned the conduct of his alleged co-conspirators, rather than his own.  ECF 717, ¶ 166–67.  "Clearly," Mejia says, he "was convicted by virtue of the implication that their testimony carried as to his character – since they

were confessed convicts so must Mejia be." *Id.* ¶ 167.  As that line illustrates, Mejia's argument is predicated on a skeptical inference about the jury's basis for its decision—an inference antithetical to the deference with which the Fourth Circuit treats the jury's decision-making.  In any event, the government is right that there is nothing unusual about the fact that much of the evidence in Mejia's trial for RICO conspiracy concerned the conduct of Mejia's co-conspirators. *See* ECF 716, at 12.  To establish the elements of the offense, the government had to prove the existence of a racketeering enterprise and a pattern of racketeering activity.  *See Salinas*, 522 U.S. at 62; *Cornell*, 780 F.3d at 621.  That requires evidence of the conduct of others.  All told, there is no reasonable probability that an argument that the evidence was insufficient to support Mejia's conviction would have succeeded on appeal.

Ruter's decision not to challenge the sufficiency of the evidence on appeal was not deficient performance because there is no reason to think such a challenge was more compelling than the challenges Ruter actually advanced.  And that decision did not prejudice Mejia's case because there was no reasonable probability that the Fourth Circuit would have accepted that argument.  So Mejia's right to counsel was not violated.

### E.  Admissibility of Cell-Site Data

Last, Mejia argues that Ruter committed a prejudicial error by failing to argue on appeal that Mejia's historical cell-site data should have been suppressed because the government obtained it without a warrant, but rather pursuant to a court order.  ECF 717, ¶¶ 163, 168–71.  Not so.

At the time Mejia filed his appeal, the law in the Fourth Circuit was that "the government does not violate the Fourth Amendment when it obtains historical [cell-site location information] from a service provider without a warrant."  *See United States v. Graham*, 824 F.3d 421, 425 (4th Cir. 2016) (en banc).  Then, before oral argument in Mejia's appeal, the Supreme Court held that

the acquisition of a person's cell-site records from a service provider is a search under the Fourth Amendment, so the government generally must obtain a warrant.  *See Carpenter v. United States*, 585 U.S. 296, 316 (2018).  As Mejia sees it, if Ruter had argued that Mejia's data was seized in violation of the Fourth Amendment under *Carpenter*, "the Fourth Circuit would have had to take [*Carpenter*] into account."  ECF 717, ¶ 171.

The Fourth Circuit has closed the door on arguments like Mejia's.  In *United States v. Chavez*, 894 F.3d 593 (4th Cir. 2018), another defendant convicted of committing violent crimes in aid of an MS-13 RICO conspiracy challenged the constitutionality of the government's procurement of his historical cell-site data pursuant to a court order, rather than a warrant.  *Id.* at 608.  There, as here, the government obtained the data before *Carpenter*, but the Fourth Circuit decided the appeal after *Carpenter*.  *Id.*  The Fourth Circuit rejected Chavez's challenge to the admission of the data.  *Id.*  The sole purpose of the exclusionary rule is to deter Fourth Amendment violations.  *Id.*  For that reason, "when investigators act with an objectively reasonable good-faith belief that their conduct is lawful, the exclusionary rule will not apply."  *Id.* (quotations omitted).  Because the government conducted the search at issue before *Carpenter*, in reasonable reliance on the permissive legal regime in place at the time, the exclusionary rule did not apply.  "While *Carpenter* is obviously controlling going forward," the Fourth Circuit said, "it can have no effect on Chavez's case."  *Id.*

Had Ruter raised *Carpenter*, the Fourth Circuit would have said the same to Mejia.  The government obtained Mejia's historical cell-site data years before *Carpenter*.  Mejia does not deny that the government was acting in reasonable reliance on the legal rules that were in place at the time of the search.  As a result, the Fourth Circuit would have held that the good faith exception applied.  *Carpenter* could have no effect on Mejia's case.  Because a *Carpenter* argument would

not have changed the outcome of the appeal, Ruter's failure to make one was not prejudicial to Mejia.

### F.  Certificate of Appealability

The accompanying Order is a final order adverse to Mejia.  Thus, the Court must issue or deny a certificate of appealability.  Rule 11(a), *Rules Governing Section 2255 Cases in the U.S. Dist. Cts.*  Mejia must receive a certificate of appealability before an appeal may proceed.  28 U.S.C. § 2253(c)(1).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court rejects a § 2255 petition on the merits, as here, a petitioner may satisfy this standard only by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Mejia has failed to demonstrate that a certificate of appealability should issue.  He still may request that the United States Court of Appeals for the Fourth Circuit issue such a certificate.  *See* Fed. R. App. P. 22(b).

## IV.    Conclusion

Mejia's § 2255 motion to vacate, set aside, or correct his sentence, ECF 717, is denied.  Mejia's original § 2255 motion, ECF 713, is denied as moot.  A certificate of appealability shall not issue.  The clerk shall close the case.

Date: March 11, 2024

_____
Deborah L. Boardman
United States District Judge